UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM JOHNSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>EPIZYME, INC., GRANT BOGLE, DAVID M. MOTT, KENNETH BATE, ROY A. BEVERIDGE, KEVIN T. CONROY, MICHAEL F. GIORDANO, CARL GOLDFISCHER, PABLO LEGORRETA, VICTORIA RICHON, and CAROL STUCKLEY,<br><br>                    Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff William Johnson ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Epizyme, Inc. ("Epizyme" or the "Company") and Epizyme's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9, arising out of the Board's attempt to sell the Company to Ipsen S.A. ("Ipsen").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the Securities and Exchange Commission ("SEC") on July 12, 2022. The 14D-9 recommends that Epizyme stockholders tender their shares in favor of a proposed transaction (the "Proposed

Transaction") whereby Epizyme is acquired by Ipsen. The Proposed Transaction was first disclosed on June 27, 2022, when Epizyme and Ipsen announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Ipsen will acquire all of the outstanding shares of common stock of Epizyme for $1.45 per share (the "Merger Consideration"). The deal is valued at approximately $247 million and is expected to close at the end of the third quarter of 2022.

3.    The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the financial analyses conducted by MTS Securities, LLC ("MTS"), Epizyme's financial advisor, and potential conflicts of interest faced by the Company's additional financial advisor Jefferies LLC ("Jefferies") and Company insiders.

4.    For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Epizyme's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Epizyme.

6.    Defendant Epizyme is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 400 Technology

Square, 4th Floor, Cambridge, Massachusetts 02139. Epizyme common stock trades on the Nasdaq Global Select Market under the ticker symbol "EPZM."

7.     Defendant Grant Bogle has been a director of the Company since 2019 and has served as President and Chief Executive Officer since 2021.

8.     Defendant David M. Mott has been a director of the Company since 2009 and has served as Chairman of the Board since 2016.

9.     Defendant Kenneth Bate has been a director of the Company since 2014.

10.     Defendant Roy A. Beveridge has been a director of the Company since 2021.

11.     Defendant Kevin T. Conroy has been a director of the Company since 2017.

12.     Defendant Michael F. Giordano has been a director of the Company since 2018.

13.     Defendant Carl Goldfischer has been a director of the Company since 2009.

14.     Defendant Pablo Legorreta has been a director of the Company since 2019.

15.     Defendant Victoria Richon has been a director of the Company since 2019.

16.     Defendant Carol Stuckley has been a director of the Company since 2021.

17.     Nonparty Ipsen is a French societe anonyme with its registered office located at 65 quai Georges Gorse – 92100 Boulogne-Billancourt, France. Ipsen common stock trades on the Euronext Paris as part of the SBF 120 index under the ticker symbol "IPSEY."

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

19.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

20.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took

place and had an effect in this District

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

21.     Epizyme is a biopharmaceutical company focused on developing treatment for

cancer through epigenetic medicines. The Company has one approved product, TAZVERIK,

which was approved in 2020 for epithelioid sarcoma and follicular lymphoma. In 2021, Epizyme

brought in $30.9 million in net revenues from sales of TAZVERIK.

22.     On June 27, 2022, the Company entered into the Merger Agreement with Ipsen.

According to the press release issued that day announcing the Proposed Transaction:

**Ipsen to acquire Epizyme, expanding its portfolio in oncology**

- **Transaction focused on lead asset Tazverik® (tazemetostat), a first-in-class EZH2a inhibitor approved in the U.S.**

- **Acquisition to bolster Ipsen's growing oncology presence and leverage its infrastructure**

- **Ipsen to commence all-cash tender offer to acquire all outstanding shares of Epizyme for $1.45 per share plus a contingent value right (CVR) of $1.00 per share**

**PARIS, FRANCE & CAMBRIDGE, MASSACHUSETTS**, 27 June 2022 –
Ipsen (Euronext: IPN; ADR: IPSEY) and Epizyme (Nasdaq: EPZM) today
announced that they have entered into a definitive merger agreement under which
Ipsen will acquire Epizyme. The transaction was unanimously approved by both
Ipsen and Epizyme Boards of Directors and is anticipated to close by the end of the
third quarter of 2022, subject to the satisfaction of all closing conditions. Epizyme

4

is a fully integrated, commercial-stage biopharmaceutical company developing and delivering transformative therapies against novel epigenetic targets for cancer patients.

The primary focus of the acquisition is on the lead medicine, Tazverik® (tazemetostat), a first-in-class, chemotherapy-free EZH2[1] inhibitor, which was granted Accelerated Approval by the U.S. Food and Drug Administration (FDA) in 2020. It is currently indicated for adults with relapsed or refractory follicular lymphoma (FL) whose tumors are positive for an EZH2 mutation as detected by an FDA-approved test and who have received at least two prior systemic therapies, and for adult patients with relapsed or refractory follicular lymphoma who have no satisfactory alternative treatment options, as well as for adults and pediatric patients aged 16 years and older with metastatic or locally advanced epithelioid sarcoma not eligible for complete resection.[i] Tazverik is currently in the Phase III stage of a registrational confirmatory study (SYMPHONY-1) in combination with rituximab and lenalidomide (R2) in patients with relapsed/refractory FL who have received at least one prior therapy. Initial results from the Phase III randomized portion of this study are planned to read out in 2026.

As part of the transaction, Ipsen will also acquire Epizyme's first-in-class, oral SETD2 inhibitor development candidate, EZM0414, which was granted FDA Fast Track status and is currently under evaluation in a recently initiated Phase I/Ib trial in adult patients with relapsed or refractory multiple myeloma and diffuse large B-cell lymphoma, as well as a portfolio of preclinical programs focusing on epigenetic targets.

"Through this agreement, we will expand our assets in oncology. Ipsen's capabilities and resources in oncology combined with Epizyme's will accelerate the growth of Tazverik to achieve its full potential in follicular lymphoma patients. The strength of data support Tazverik's positioning in patients with both EZH2 mutation positive and wild-type follicular lymphoma. We are compelled by the potential of its efficacy and tolerability profile, especially for elderly and/or frail patients who are treated in the community-based setting. Furthermore, we are excited to bring on board epigenetic expertise and the SETD2 inhibitor, as well as several pre-clinical compounds into our portfolio," said David Loew, Chief Executive Officer of Ipsen.

"Epizyme was founded in 2007 with a commitment to rigorous scientific research and a vision of developing novel epigenetic therapies. I am incredibly proud of what our team has accomplished over the past 15 years, from the approval of Tazverik to advancing our next novel investigational agent, EZM0414, to the clinic, as well as the progress made on our preclinical compounds focused on both hematologic malignancies and solid tumors," said Grant Bogle, President and Chief Executive Officer of Epizyme. "We expect that this acquisition and Ipsen's commitment to invest in the oncology space will ensure our epigenetic pipeline continues to advance in a way we could not have done on our own to bring transformative cancer

therapies to patients in need."

**Financial highlights**

The acquisition of Epizyme will immediately provide incremental sales and will leverage the U.S. commercial infrastructure. Given the level of ongoing R&D expenses, the transaction is expected to be moderately dilutive on Ipsen's core operating income until the end of 2024. This is in line with Ipsen's medium-term outlook regarding its strategic focus on building a high-value and sustainable pipeline through external innovation. The dilutive impact on 2022 core operating margin will be limited, given the expected timing of the transaction.

**Transaction details**

The Board of Directors of Epizyme has unanimously approved the transaction and recommended that the stockholders of Epizyme tender their shares in the tender offer. Royalty Pharma, Epizyme's largest stockholder with approximately 20.5% of Epizyme's total shares of common stock outstanding (on a non-diluted basis) as of the date hereof, has entered into a support agreement with Ipsen pursuant to which it has agreed to tender its shares in the tender offer.

Under the terms of the agreement and plan of merger, Ipsen, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Epizyme at a price of $1.45 per share in cash at the closing of the transaction, for an initial estimated aggregate consideration of $247 million plus one contingent value right (CVR) per share. Each CVR will entitle its holder to deferred cash payments of $0.30 per CVR payable upon the first achievement of $250 million in aggregate net sales of Tazverik (excluding sales in Japan and Greater China[3]) in any period of four consecutive quarters, by 31 December 2026 and $0.70 per CVR payable upon receipt of U.S. regulatory approval necessary for the commercial marketing and sale of the combination of Tazverik and $R^2$ (rituximab and lenalidomide) in second-line follicular lymphoma by 1 January 2028. The $1.45 per share cash consideration represents a premium of approximately 144% compared to Epizyme's average closing price of $0.60 over the 30 trading days preceding announcement of the transaction. The transaction will be fully financed by Ipsen's existing cash and lines of credit.

## B.  The Materially Incomplete and Misleading 14D-9

23.     On July 12, 2022, Defendants filed the 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such

information, Plaintiff cannot make a fully informed decision concerning whether or not to tender his shares in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning MTS's Financial Analyses

24.     With respect to the *Discounted Cash Flow Analysis,* the 14D-9 fails to disclose: (a) Epizyme's cash flows from calendar year 2036 and going forward; (b) the Company's terminal values; and (c) the key data, inputs, and assumptions underlying the range of discount rates applied by MTS.

25.     With respect to the *Public Trading Comparable Companies Analysis*, the 14D-9 fails to disclose the objective selection criteria for each company, as well as the specific financial multiples and metrics for each company studied by MTS.

26.     With respect to the *Precedent Transactions Analysis,* the 14D-9 fails to disclose the objective selection criteria for each transaction, as well as the as well as the specific financial multiples and metrics for each transaction studied by MTS.

### Materially Incomplete and Misleading Disclosures Concerning Jefferies' and Company Insiders' Potential Conflicts of Interest

27.     The 14D-9 also fails to disclose material information concerning potential conflicts of interest involving Jefferies.

28.     Specifically, the 14D-9 omits details concerning whether and what services Jefferies rendered to Epizyme, Ipsen, or their affiliates in the previous two years and the compensation received by Jefferies for any such services.

29.     Additionally, the 14D-9 fails to disclose information concerning potential conflicts of interest involving Company insiders.

30.     Specifically, the 14D-9 fails to disclose material information concerning Company insiders' potential conflicts of interest, namely details concerning any discussions or negotiations

with Ipsen concerning post-transaction employment or retention of Epizyme's management by the surviving company.

31.    Additionally, the 14D-9 fails to disclose any information concerning discussions or negotiations involving the "Special Recognition Letters" with Jerald Korn and Jeffery Kutok, including who had those discussions, the content of the communications, and when, where, and how they occurred.

32.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

33.    In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

34.    Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

35.    Further, the 14D-9 indicates that on June 26, 2022, MTS reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger

Consideration was fair, from a financial point of view, to Epizyme stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning MTS's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

36.     Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

### CLAIMS FOR RELIEF

### COUNT I

**All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Defendants have filed the 14D-9 with the SEC with the intention of soliciting Epizyme stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

39.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Epizyme, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

40.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not

misleading. . . ." 15 U.S.C. § 78n(e).

41.     Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) the value of Epizyme shares and the financial analyses performed by MTS in support of its fairness opinion; and (ii) potential conflicts of interest on the part of Jefferies and Epizyme insiders.

42.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that MTS reviewed and discussed its financial analyses with the Board during various meetings including on June 26, 2022, and further states that the Board considered MTS's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

43.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff, who will be deprived of his right to make an informed decision whether to tender his shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Epizyme within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Epizyme and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

48.     In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 25, 2022                    **ROWLEY LAW PLLC**

                                        *S/ Shane T. Rowley*
                                        Shane T. Rowley (SR-0740)
                                        Danielle Rowland Lindahl
                                        50 Main Street, Suite 1000
                                        White Plains, NY 10606
                                        Tel: (914) 400-1920
                                        Fax: (914) 301-3514
                                        Email: srowley@rowleylawpllc.com
                                        Email: drl@rowleylawpllc.com

                                        *Attorneys for Plaintiff*

13
